STACIA CULLEN, AS ADMINISTRATRIX, ETC., OF JAMES CULLEN, DECEASED, APPELLANT, *v.* FREDERICK O. NORTON, RESPONDENT.

| 52 | 9 |
| 61 | 132 |
| 52 | 9 |
| 67 | 490 |
| 69 | 377 |

*Duty of the owner of a mine, to his servants — submission to the jury of the question. as to his negligence — what risks the servant does not assume.*

On the 4th day of June, 1887, the plaintiff's intestate, one Cullen, who was a quarry-man or miner in the employ of the defendant, was killed by the falling of rocks from an unexpected discharge of a blast in the defendant's cement quarry in the town of Rosendale. On that day eleven holes had been drilled and charged in a perpendicular breast of rock, which were fired at one time, one of which did not explode. The attention of the defendant's foreman in charge of the work having been called to the unexploded blast he remarked that it would not pay to bother with firing it, and gave directions to drill other holes around and near it and pointed out the places, and directed Cullen and other workmen to commence drilling upon the same breast of rock about fifteen or twenty feet beneath the unexploded blast. While the men were drilling above and Cullen below it the unexploded blast unexpectedly exploded, and the rocks thrown out fell upon Cullen and killed him.

Upon an appeal from a judgment dismissing the complaint, upon the close of the plaintiff's testimony, in an action brought to recover damages occasioned by the death of the intestate:

*Held*, that one of the duties of the master was to furnish his servant a safe and proper place in which to prosecute his work; that this duty continued to be the master's, no matter to what subordinate servant he delegated its performance.

That by placing the intestate at work directly underneath the unexploded blast, while other servants were drilling the rock within two feet of it, exposed him to the danger of injury from the falling pieces of rock, if by any chance the blast should be accidentally exploded, and, in view of all the circumstances, the question as to whether such exposure was negligence on the part of the master should have been submitted to the jury.

*Turner* v. *Chateaugay Ore Company* (21 Weekly Dig., 40); *Loughlin* v. *State of New York* (105 N. Y., 159); *Crispin* v. *Babbitt* (81 id., 516); *McCosker* v. *Long Island Railroad Company* (84 id., 77); *Scott* v. *Sweeney* (34 Hun, 292) distinguished.

It was urged that the deceased knew all about the facts and voluntarily assumed the risks, and thus by his contributory negligence precluded a recovery.

*Held,* that this was a question for the jury.

Where a servant does not assert his judgment, in opposition to the supposed better judgment or stronger will of his master, the law usually allows a jury to determine whether he voluntarily assumed the risks, or acted in reliance upon the judgment of his master, or out of a constrained acquiescence in the rule of obedience which his relation as servant imposed.

APPEAL from a judgment dismissing the complaint, directed by the court upon the close of the plaintiff's testimony, upon a trial at the Ulster Circuit before a jury, which was entered in the office of the clerk of Ulster county on June 25, 1888.

The plaintiff's intestate, James Cullen, was killed on the 4th day of June, 1887, by falling rock resulting from an unexpected discharge of a blast in the defendant's cement quarry in the town of Rosendale. Cullen was a quarryman or miner in the employ of the defendant. Eleven holes had been drilled and charged in a perpendicular breast of rock. They were fired at one time, but only ten exploded. Patrick Dolan was defendant's foreman in charge. His attention was called to the unexploded blast, and the boss blaster said, "Fire it." Dolan remarked that it would not pay to bother with it, and he gave directions to drill other holes around it and near it, and pointed out the places. He then directed Cullen and other workmen to commence drilling upon the same breast of rock, about fifteen or twenty feet beneath the unexploded blast. Air drills were used by Cullen and by the men above him. While the men were drilling above and Cullen below, the unexploded blast unexpectedly exploded, and the rock thrown out fell upon Cullen and killed him.

*D. M. Dewitt,* for the appellant.

*J. N. Fiero,* for the respondent.

LANDON, J. :

Upon the evidence, we think this case ought to have been submitted to the jury. The plaintiff's intestate took upon himself all the risks incident to the dangerous character of his service, except those that might befall him in consequence of his master's negligence. (*Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y., 368.) One of the duties of the master was to furnish his servant a safe and proper place in which to prosecute his work. (Id.) This duty continued to be the master's, no matter to what subordinate servant he delegated its performance. (Id.) The defendant's foreman was intrusted with its performance, and hence stood in place of and represented the master in assigning the servant to his fatal place of labor. If it was negligence to assign him to this place, the negligence was the master's. This place was upon the bench of the breast of perpendicular wall of rock, fifteen or twenty feet beneath the undischarged blast, within two feet of which two other workmen were engaged in drilling holes. It may be that the best method of treating the undischarged blast was to drill holes around it, charge and explode them, and thereby blow out the rock which held it. A mistake in that respect might be merely a mistake in judgment as to the best method of treatment of a dangerous situation, and not at all attributable to negligence. But to place the servant at work directly underneath the unexploded blast, while other servants were drilling the rock within two feet of it, exposed him to the danger of injury from the falling pieces of rock, if, by any chance, the blast hould sbe accidentally exploded. It would be for the jury to say, in view of all the circumstances, whether such exposure was negligence on the part of the master.

In *Turner* v. *Chateaugay Ore Company* (21 Weekly Dig., 40), decided by us, a hole had been charged and fired, but the explosion did not perform the service expected, and defendant's foreman told the plaintiff to drill it deeper. The fact was that in the discharge, some of the explosive material in the hole remained unexploded, and as the plaintiff was engaged in drilling the hole deeper, this material exploded and injured him. The risk was incident to the work, and would be great in any place and under any master. A sharp inspection of the hole before commencing to drill it would be the ordinary duty of the workman. If it had been made by the

foreman, he would simply be doing servants' work, and his negligence would be the work of a fellow-servant.

*Loughlin* v. *State of New York* (105 N. Y., 159) is cited. There the captain of the State's boat, and the plaintiff and other workmen, under the direction of the captain, were all digging clay from a bank and loading it upon the boat. In the prosecution of this work the captain first loosened the overhanging earth and then set the plaintiff to digging underneath. The loosened earth fell upon the plaintiff and injured him. The court held they were all servants together, doing servants' work; and though the captain was in charge, yet he was only in charge of the details of servants' service. So it was in *Crispin* v. *Babbitt* (81 N. Y., 516); *McCosker* v. *Long Island Railroad Company* (84 id., 77), and in *Scott* v. *Sweeney* (34 Hun, 292), decided by us. Here the plaintiff's intestate had nothing to do with the unexploded hole; he was not co-operating with respect to it, but was, by the direction of the foreman, set to work to make new holes fifteen or twenty feet beneath it. The foreman was in no way working with him or participating in the execution of any of the details of his work. The danger to which he was exposed was not incident to his work, but wholly incident to the place where he was assigned to do it. Here the defendant was in Europe, and his foreman represented him. When the foreman told plaintiff's intestate to go to work in this place of danger, he spoke with the authority of the master. He might have assigned him a place of labor remote from the danger of this unexploded blast. He substituted this place for the safe places at his command.

It is urged that the deceased knew all about the facts and voluntarily assumed the risks, and thus by his contributory negligence precluded recovery. This is for the jury. When a servant does not assert his judgment, in opposition to the supposed better judgment or stronger will of his master, the law usually allows a jury to determine whether he voluntarily assumed the risks, or acted in reliance upon the judgment of his master, or out of a constrained acquiescence in the rule of obedience which his relation as servant imposes. (*Hawley* v. *Northern Central R. R. Co.*, 82 N. Y., 370.)

The judgment is reversed, new trial granted, costs to abide the event.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment reversed, new trial granted, costs to abide event.